UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOEL A. BRODSKY, ) | |
| ) | |
| Plaintiff, ) | Case No. 1: 22-cv-06462 |
| ) | |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| FEDERAL BUREAU OF ) | |
| INVESTIGATION, an agency of the ) | |
| UNITED STATES OF AMERICA ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Joel A. Brodsky, brings this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), to compel Defendant Federal Bureau of Investigation ("FBI") to disclose all documents requested by Brodsky from the FBI under the provisions of the FOIA. Before the court is the FBI's motion for summary judgment [66] and Brodsky' cross motion for summary judgment [83]. For the reasons below, this Court grants the summary judgment in favor of the FBI. The FBI's motion to extend the time of the filing of its reply in support of its motion for summary judgment and response to the Brodsky's cross motion for summary judgment [84] is denied as moot.

**BACKGROUND**

*A. Factual Background*

Plaintiff Joel Brodsky is a former lawyer. Defendant FBI is an agency of the Department of Justice, an executive department of the United States Government. Brodsky submitted a FOIA request to the FBI in October 2020 seeking any and all records concerning himself with a search time frame of January 1, 2000, to present. (Dkt. [67] at ¶ 4). Brodsky claimed that he was a cooperating witness with the code name "Noah." *Id.* Brodsky also requested "[a]ny and all documents, reports, or communications regarding or referring to an internal FBI investigation(s)

1


into the conduct of FBI Special Agent Lyle Evans, at any time after 2001;" "[a]ny and all documents, reports, or communications regarding or referring to an investigation into suspected criminal activity, suspected illegal activity and/or suspected corruption within the Domestic Relations Division (a/k/a Divorce Division) of the Circuit Court of Cook County, Illinois, by the FBI between 2000 and 2020;" and any and all documents, reports, or communications regarding conversations with Guardian Ad Litem/Attorney David Pasulka at the direction of FBI Special Agents. (*Id.*)

By letter dated October 15, 2020, the FBI informed Brodsky that it had received his request and assigned it Request Number 1478481-000. (*Id.* at ¶ 5). FBI files are indexed using main and reference indexes. (*Id.* at ¶ 6). The main index entries are of the person or thing that is the subject of an investigation, and the reference index concerns individuals or things associated with but not the subject of the investigation. (*Id.*) In October 2020, the FBI conducted a search using its main file index per the FBI's procedure to search only main files if a reference search was not requested and no specific details were provided that would cause a need for reference files to be searched. (*Id.*) This search returned no records, and the FBI so advised Brodsky. (*Id.*)

The FBI subsequently determined that additional searching should be conducted and advised Brodsky that his FOIA request was being reopened and assigned Request Number 1478481-001. (*Id.* at ¶ 7). The FBI determined that a search of the automated indices for its central records system, available within its Sentinel database via the Sentinel and automatic case support (ACS) search functions in Sentinel, represented the most reasonable means for the FBI to locate potentially responsive records. (*Id.*) The indices provide access to a comprehensive, agencywide set of indexed data and consist of millions of searchable records that are updated daily with newly indexed information. (*Id.*)

The FBI searched using reference entries in its Sentinel and ACS indices using the following terms: "Joel Brodsky" and "Noah Brodsky," employing a search cut-off date of October 15, 2020(the FBI's initial record search). (*Id.* at ¶ 8). Files were located and processed for Brodsky for those search terms. The FBI also searched the terms "Domestic Relations Division" and "Divorce Division." No records were found to be responsive to this portion of the request. (*Id.*)

By letter dated February 28, 2023, the FBI made its first interim release of records to Brodsky, advising that 23 pages were reviewed, and 7 pages were being released in full or part, with certain information exempted pursuant to Privacy Act Exemption (j)(2), 5 U.S.C. § 552a (j)(2), and FOIA Exemptions (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E), 5 U.S.C. §§ 552 (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E). (*Id.* at ¶ 9).

Additionally, the FBI advised that to the extent that Brodsky requested information regarding specific third-party individuals, the FBI will neither confirm nor deny the existence of such records pursuant to FOIA Exemptions (b)(6) and (b)(7)(C), 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C). (*Id.* at ¶ 10). The FBI also notified Brodsky that it had conducted a main and reference entity search of its Central Records System for records pertaining to the Domestic Relations Division of the Circuit Court of Cook County, Illinois between 2000 and 2020, however it was unable to identify records that were responsive to the FOIA request. (*Id.*) The FBI released additional documents on March 28, 2023; April 28, 2023; and May 31, 2023. (*Id.*)

In all, the FBI processed a total of 564 pages of responsive records subject to the FOIA. Of these pages, the FBI released 14 pages in full, released 84 pages in part, and withheld 466 pages in full because the withheld pages and portions of pages were exempt pursuant to one or more applicable FOIA Exemptions or else were duplicative of other pages accounted for elsewhere in the FBI's production. (*Id.* at ¶ 12). The FBI numbered all pages of its production consecutively as FBI (22-cv-6462)- 1 through FBI (22-CV-6462)-564. *Id.* The FBI redacted these pages in whole or in

3

part based on applicable FOIA exemptions (b)(3), (b)(5), (b)(6), and (b)(7). Ex. 1(Z) is an index that indicates the specific FOIA exemptions asserted on each page and the kind of information that is being protected. (*Id.*)

B. *Procedural History*

Brodsky filed his complaint on November 18, 2022. (Dkt. [1]). On April 19, 2023, Brodsky moved for *in camera* inspection of the undisclosed documents at issue in this case, representing that the documents contained information relating to statements he made as a confidential informant. (Dkt. [18]). Magistrate Judge Jeffery Cole conducted an *in camera* review of the documents as the parties discussed settlement. (Dkt. [51]).

On February 1, 2024, pursuant to this Courts's order, the FBI filed a heavily redacted *Vaughn* index. (Dkt. [59]). After a second hearing determining that this *Vaughn* index was insufficient, this Court entered an order on February 7, 2024, directing the FBI to file its *Vaughn* index with more information on the docket by February 13. (Dkt. [63]). This Court also gave the FBI leave to file an unredacted *Vaughn* index for *in camera* inspection to determine whether any information must be turned over to the Brodsky. *Id.* The FBI filed its amended public Vaughn index on February 13, 2024 and Brodsky filed his objections to the public *Vaughn* index on February 21, 2024. (Dkt. [65]).

On March 22, 2024, the FBI moved for summary judgment. (Dkt. [66]). After the Court heard brief oral arguments, the Court granted Brodsky's motion to pause briefing on FBI's motion for summary judgment pending the Court's ruling on the objections to the amended *Vaughn* index on April 2, 2024. (Dkt. [72]).

On May 3, 2024, this Court, having reviewed the FBI's redacted *Vaughn* index as well as the accompanying declaration *in camera*, entered an Order finding that the redacted *Vaughn* index provided to the Brodsky was sufficient, and set a briefing schedule on the Motion for Summary

4

Judgment. (Dkt. [73]). That same day, Brodsky moved this Court to compel the FBI to disclose and deliver the Court all documents requested by Brodsky from Defendant under the provisions of the FOIA so the Court can conduct an *in camera* inspection of the documents during its consideration of the summary judgment motion brought by the FBI. (Dkt. [74]). The Court noted that the documents at issue had been previosuly provided in this case to Magistrate Judge Cole for his review. Despite this, this Court ordered the FBI to provide unredacted copies of the documents to this Court for *in camera* review and paused briefing on FBI's motion for summary judgment pending the Court's review of the documents. (Dkt. [76]).

On May 22, 2024, after conducting Brodsky's requested *in camera* review of the unredacted documents, the *Vaughn* index, and the accompanies declarations providing reasons and justification for the redactions, this Court held that the redactions were proper and that the FBI has provided Brodsky with all of the information to which he was entitled and continued the summary judgment briefing schedule. (Dkt. [77]).

Brodsky filed his cross-motion for summary judgment on July 31, 2024. (Dkt. [83]). Although the motions are not yet fully briefed, the Court has determined from the parties' submissions that there are no disputes of fact exist such that summary judgment for either side is precluded; further response and reply briefs would not alter this conclusion. *See Carter v. City of Wauwatosa*, No. 19-CV-1422-JPS, 2022 WL 3228046, at *2 (E.D. Wis. Aug. 10, 2022) (ruling on cross motion for summary judgment before fully briefed). Accordingly, the FBI's motion to extend the time of the filing of its reply in support of its motion for summary judgment and response to the plaintiff's cross motion for summary judgment [84] is denied as moot.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

5

A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson,* 477 U.S. at 255 (quotation omitted).

**DISCUSSION**

   *A. The Freedom of Information Act*

The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S. Ct. 2311, 57 L.Ed.2d 159 (1978). Toward that end, FOIA provides that agencies "shall make ... records promptly available to any person" who submits a request that "(i) reasonably describes such records and (ii) is made in accordance with [the agency's] published rules." 5 U.S.C. § 552(a)(3)(A). The Act is "broadly conceived," and its "basic policy" is in favor of disclosure. *Robbins Tire,* 437 U.S. at 220, 98 S. Ct. 2311. Agencies are, however, permitted to withhold records under nine statutory exemptions and three special exclusions for law-enforcement records. *See* 5 U.S.C. § 552(b)-(c); *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 386 (7th Cir. 2015).

To establish a cause of action under the FOIA, a plaintiff must show that, in response to a valid FOIA request, "an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.' " *Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)). A valid FOIA request reasonably describes the records if the agency can

6

determine exactly what records are being requested. 5 U.S.C. § 552(a)(3)(A); *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996). "A reasonable description of records is one that would allow an agency employee to locate the records 'with a reasonable amount of effort.' " *Moore v. FBI*, 283 F. App'x 397, 398 (7th Cir. 2008) (quoting *Marks v. USDOJ,* 578 F.2d 261, 263 (9th Cir. 1978)). A request seeking all records relating to a subject may not satisfy this standard and therefore may not trigger the agency's obligation to search for records. *See Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 61-62 (D.D.C. 2013). The request must also be made in compliance with the agency's rules on the time, place, fees, and procedures for making such a request. 5 U.S.C. § 552(a)(3)(A).

Agency records may be found to be improperly withheld if the agency failed to make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 387 (7th Cir. 2015) (internal quotations omitted); *accord Stimac v. USDOJ*, 991 F.2d 800, 1993 WL 127980, at *1 (7th Cir. 1993) (Table) (search must be "reasonably calculated to uncover all relevant documents"); *In re Wade*, 969 F.2d 241, 249 n. 11 (7th Cir. 1992) (question is whether search was "reasonably calculated to uncover all relevant documents"). The agency need not search all of its record systems, but only systems where responsive information is likely to be found, although it should explain why it believes such limits are reasonable. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "Good faith is presumed ..., and it can be bolstered by evidence of the agency's efforts to satisfy the request." *Rubman*, 800 F.3d at 387 (internal citation omitted).

In the event even acknowledging whether responsive records exist would jeopardize the interests sought to be protected by FOIA exemptions, the agency may respond with a "*Glomar* response." *See Bassiouni v. CIA*, 392 F.3d 244, 246-47 (7th Cir. 2004). A *Glomar* response neither confirms nor denies that responsive records exist. *Bassiouni*, 392 F.3d at 246-47; *Antonelli v. FBI*, 721

7

F.2d 615, 617-18 (7th Cir. 1983). However, when the interest to be protected is an individual's privacy interest, the agency may not use a *Glomar* response if the requester provides a waiver from the individual, proof that the individual is dead, or a showing that the public interest outweighs the individual's privacy interest. *See, e.g., Donato v. Exec. Office for U.S. Attys.*, 308 F. Supp. 3d 294, 306 (D.D.C. 2018) (acknowledging FBI policy not to issue *Glomar* response to FOIA request seeking third party information where "the requester submits a privacy waiver or proof of death, or demonstrates an overriding public interest in disclosure.").

"[T]he plaintiff can overcome a *Glomar* response by showing that the agency has already disclosed the fact of the existence (or nonexistence) of responsive records, since that is the purportedly exempt information that a *Glomar* response is designed to protect." *ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013); *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007). This rule applies where the FBI has officially acknowledged a connection between the individual and the FBI such as, for example, when the individual was called as a government witness at trial and identified as an FBI informant. 5 U.S.C. § 552(c)(2) (criminal informant records not subject to FOIA unless informant has been "officially confirmed"); *see Pickard v. DOJ*, 653 F.3d 782, 786 (9th Cir. 2011); *Boyd v. Criminal Div. of USDOJ*, 475 F.3d 381, 388 (D.C. Cir. 2007). Where the existence of a relationship between the FBI and the individual—and logically the existence of records regarding the individual—has been officially recognized—the FBI can no longer rely on a *Glomar* response. *Pickard*, 653 F.3d at 786.

Three things are required to establish official acknowledgement by an agency: "First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed.... Third, ... the information requested must already have been made public through an official and documented disclosure." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).

An agency can carry its burden on summary judgment by submitting affidavits that "(1) describe[s] the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate[s] that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of agency bad faith." *Kimberlin v. Dep't of Treasury*, 774 F.2d 204, 210 (7th Cir. 1985) (internal quotations omitted). The agency is entitled to a presumption of good faith which cannot be rebutted by mere speculation. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see In re Wade*, 969 F.2d 241, 246 (7th Cir. 1992). Courts must give substantial weight to an agency's affidavit. *ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013). The Court has discretion to review documents or an index of withheld documents (a "*Vaughn* index") *in camera* but is not required to do so where the agency has submitted a sufficient affidavit. *Kimberlin*, 774 F.2d at 210; *Antonelli v. DEA*, 739 F.2d 302, 303-04 (7th Cir. 1984). "Ultimately, an agency's justification for invoking a FOIA exemption, whether directly or in the form of a *Glomar* response, is sufficient if it appears logical or plausible." *ACLU v. CIA*, 710 F.3d at 427 (internal quotations omitted).

 B. *The Parties Positions*

Boths parties have moved for summary judgment. In support of its motion, the FBI argues that the agency conducted a search in response to Brodsky's request and processed over 500 pages of responsive records, most of which it withheld pursuant to applicable FOIA exemptions that allow the FBI to protect the secrecy of its sensitive investigations, the identify of its confidential sources, and the underlying information provided by such sources. Therefore, summary judgment should be granted because the withholdings were authorized and reasonable under applicable FOIA exemptions. Brodsky argues that the FBI's redactions and withholding are improper and that the claimed exemptions do not apply.

Brodsky's motion for summary judgment faces two fundamental problems. First, as Brodsky concedes, he has not seen the documents which he is claiming have been improperly redacted and withheld. Brodsky has only been provided with a highly redacted *Vaughn* Index. He has not seen the majority of the unredacted documents. As a result, Brodsky concedes that he can only speculate as to the contents of the documents and, therefore, cannot address whether or not a specific piece of information falls under a specific exemption. Further, Brodsky has previosuly admitted in Court that he does not know and cannot say what documents are being withheld from him. In other words, much of Brodsky's motion is baseless to the extent that he cannot provide any confirmation that the redacted documents relate to him at all.

This leads to Brodsky's second and more glaring problem: the fact that this Court has reviewed the documents at issue at his repeated requests. As an initial matter, it must first be stated that Brodsky was *not* entitled to an *in camera* review. Pursuant to FOIA, a court "*may* examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions." 5 U.S.C. § 552(a)(4)(B) (emphasis added); *Robbins Tire*, 437 U.S. at 224 ("The *in camera* review provision is discretionary by its terms."). However, "[p]recedent holds that a district court may 'deny[ ] *in camera* review of records when affidavits submitted by the Government (1) describe the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of bad faith.' " *Erwin v. U.S. Dep't of State*, No. 11 C 6513, 2013 WL 6452758, at *2 (N.D. Ill. Dec. 9, 2013) (Feinerman, J.) (*quoting Silets v. U.S. Dep't of Justice*, 945 F.2d 227, 229 (7th Cir. 1991)); *see also White v. Dep't of Just.*, 460 F. Supp. 3d 725, 738 (S.D. Ill. 2020) ("The Court has discretion to review documents ... *in camera* but is not required to do so where the agency has submitted a sufficient affidavit."); *see Henderson Parks, LLC v. Fed. Bureau of Prisons*, No. 23 C

10

13762, 2024 WL 1834150, at *8 (N.D. Ill. Apr. 26, 2024) (Cummings, J.) (denying to perform an *in camera* review).

In support of its motion and at Brodsky's request, the FBI submitted the affidavit of Michael G. Seidel, a section chief in the FBI's management division in Winchester, Virginia, a *Vaughn* index describing the redactions and documents withheld under each applicable exemption, and the 564 unredacted documents which had previosuly been provided to Magistrate Judge Cole. As a result of Brodsky's repeated pleas for this Court to review *in camera* the documents and unredacted *Vaughn* index, this Court obliged and previously held: (1) that the Seidel affidavit and accompanying unredacted *Vaughn* index were sufficiently detailed and non-conclusory to support FBI's redactions and/or withholdings; (2) that the documents provided for *in camera* review were properly withheld from Brodsky for the reasons stated in the accompanying declarations; and (3) that Brodsky has offered little beyond speculation to rebut the FBI's position. *See White*, 460 F. Supp. 3d at 738 ("The agency is entitled to a presumption of good faith which cannot be rebutted by mere speculation."); *see also Henderson Parks, LLC*, 2024 WL 1834150, at *4.

This Court can understand Brodsky's frustration as he has not seen the documents at issue. Reviewing documents *in camera* is no "substitute for the government's obligation to provide detailed public indexes and justifications whenever possible." *Lykins v. U.S. Dep't of Justice,* 725 F.2d 1455, 1463 (D.C.Cir.1984). That said, courts have recognized "that there are occasions when extensive public justification would threaten to reveal the very information for which a FOIA exemption is claimed." *Lykins,* 725 F.2d at 1463. Although in such a case an agency is still required to provide as much public explanation as it can without "giving away the information it is trying to withhold," it may supplement its explanation by making the documents available for *in camera* review. *Id.* at 1463–64.; *See Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1185 (D.C. Cir. 2011).

11

Having reviewed the declarations and documents *in camera*, this Court agrees with the FBI's assertions that revealing the information could threaten the information it seeks to withhold. It is undisputed that the FBI conducted an adequate search for documents and the Court previously found that the claimed exemptions were proper during the *in camera* review. As a result, this Court need not address the specific documents and applicable exemptions. It is enough for this Court to say, as it has before, that the FBI's exemptions, redactions, and withholdings were proper.

**CONCLUSION**

Given this Court's *in camera* review of the unredacted *Vaughn* index, the accompanying declarations, and the documents at issue as the claim exemptions, this Court has determined that Brodsky has received all of the information to which he is entitled. Accordingly, summary judgment [66] is granted in favor of the FBI and denied [83] as to Brodsky. The FBI's motion to extend the time of the filing of its reply in support of its motion for summary judgment and response to the plaintiff's cross motion for summary judgment [84] is denied as moot.

**IT IS SO ORDERED**

Date: 8/16/2024

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

12